# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Hall | Civil Action No. 6:18-00410 |
| Versus | Magistrate Judge Carol B. Whitehurst |
| Landstar Ranger Inc et al | By Consent of the Parties |

## MEMORANDUM RULING AND ORDER

Before the Court are Defendants, Landstar Ranger Inc. and Jacques J. Manasse's, Motion for a New Trial, Or Alternatively For Remittitur, Pursuant to Fed. R. Civ. P. 59 And Requests For Stay On Execution On Judgment Pursuant to Fed. R. Civ. P. 62(b) [Rec. Doc. 108], Plaintiff, James Michael Hall's, Memorandum in Opposition [Rec. Doc. 113] and Defendants' Reply thereto [Rec. Doc. 116]. For the following reasons, the Motion will be denied.

## I. BACKGROUND

This case arises out of an incident that occurred on September 4, 2017, when plaintiff, James Hall, was driving a 2002 GMC Envoy, owned by Elizabeth B. Guillot, in a westerly direction on Interstate 10 in Calcasieu Parish, Louisiana. At the same time, a 2012 Freightliner Cascadia tractor trailer truck, operated by defendant, Jacques Manasse, and owned by defendant, Landstar Ranger Inc. ("the 18-wheeler"), was also traveling westbound on I-10 in Calcasieu Parish, Louisiana. Jacques Manassee failed to stop for stopped traffic and collided with the

rear of James Hall's vehicle. Jacques Manasse, was in the course and scope of his employment with defendant, Landstar Ranger, Inc., at the time of the accident. Defendants stipulated to liability and sole fault.

This matter was tried by a jury on January 21-28. *R. 82-88*. Defendants chose to concede causation and liability for the 18-wheeler collision and try the case solely to determine the damages to which Plaintiff was entitled.  It is undisputed that the testimony adduced at trial showed the following: Plaintiff was struck at a high rate speed by the 18-wheeler loaded to 77,000 pounds; the collision was so violent that it broke the seat back and rails supporting the seat; the impact knocked Plaintiff's vehicle 515 feet from the point of impact to the point of rest; there was a secondary collision with either a downed light pole or the ditch after Plaintiff had traveled the 515 feet from the point of impact; Plaintiff was knocked unconscious and was witnessed in a state of unconsciousness by first responders; Plaintiff had to be assisted from the vehicle, and removed to an emergency room by ambulance; Plaintiff had an altered Glasgow Coma Scale at the scene and during transport to the hospital; Dr. David Barczyk testified that the magnitude of forces exerted in the accident were substantially greater than that necessary to injure the human body; the testifying State Trooper advised that the 18-wheeler left no skid marks indicating that he locked up the brakes prior to impact. The defense elected not to call an opposing Biomechanics expert or their driver to discuss the force of impact.

It is also undisputed that at the time of the accident Plaintiff had worked for three months as a truck driver who performed quality control for Martin Automotive in Sulphur, Louisiana. Plaintiff's manager, Diogo Tavares, testified that during those three months, he viewed Plaintiff as a valuable employee with no physical, emotional or mental limitations. Plaintiff had earned two raises and a promotion and Tavares expected Plaintiff to earn additional promotions.

At the time of the accident, Plaintiff was in a relationship with his girlfriend, Elizabeth Guilliot. Following the accident, Ms. Guilliot helped care for Plaintiff for approximately one year. While they had not spoken for more than 18 months at the time of trial, Ms. Guilliot provided the following testimony: She and Plaintiff worked out together almost every morning prior to the accident; his workouts were "intense" and she never saw him physically limited in any way; on the date of accident, Plaintiff borrowed her car to assist friends in Houston, Texas recover from the flood caused by Hurricane Harvey; she was advised of the accident and was told that Plaintiff was being transported to the hospital by the State Trooper; at the hospital, Plaintiff was confused, dazed and in pain; over the course of several weeks to months, Plaintiff continued to have problems with falling, dizziness, emotional outbursts, and pain; she stayed by his side and helped care for him after his left knee and right shoulder surgery; Plaintiff was completely changed following the accident

(not the same man he was before it); ultimately he drove her away following one of his surgeries.

The medical testimony at trial showed that Plaintiff suffered a concussion with loss of consciousness; traumatic brain injury and post-concussive syndrome; and emotion sequella secondary to trauma. All experts, both Plaintiff's doctors (Dr. William Brennan, Dr. Patrick Juneau and Dr. Eric Hayes) as well as Defendants' doctors (Dr. Kevin Bianchinni and Dr. Rennie Culver) testified that Plaintiff suffered a traumatic brain injury. The Plaintiff's and Defendants' experts differed on whether or not there was continuing organic brain injury or whether the sequella was emotional. The medical testimony also showed that Plaintiff suffered damage to his left thumb and left pinky finger; a torn left anterior cruciate ligament; a torn left medial meniscus; a torn left posterior collateral ligament; a C4-5 disk herniation indenting the spinal cord; broad-based protrusion/herniation at C5-6 flattening the ventral aspect of the spinal cord; bulging/herniated disk at C6-7 obliterating or nearly obliterating spinal fluid in front of the spinal cord; L5-S1 annular fissure with herniation. The defense experts addressed the neck and back injuries but Defendants produced no experts to discuss the orthopedic injuries.

On January 28, 2020, the jury returned a verdict in favor of Plaintiff in the amount of $4,375,017.62. *R. 96.* The jury awarded Plaintiff the full sum of $232,017.62 in past medicals. The jury also awarded Plaintiff's future medical

expenses, his past lost wages, and future earning capacity. The jury awarded Plaintiff general damages in the amount of $2,500,000.00. The Court entered a Judgment on February 5, 2020. *R. 97.* Defendants filed this motion seeking a new trial pursuant to Rule 59, or alternatively, a remittitur and amendment to the Judgment.

## II. LAW AND ANALYSIS

A. Motion For New Trial

*1. Legal Standard*

Defendants seek a new trial pursuant to Federal Rule of Civil Procedure 59. Rule 59(a) provides that a district court may grant a new trial "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Under Rule 59, a new trial may be granted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *see also Wright v. National Interstate Insurance Co.*, 2018 WL 2017567, at *3 (E.D.La. 2018). "A district court, however, should attempt to avoid substituting its judgment for the jury's considered verdict, so as to not violate the parties' Seventh Amendment rights." *Wright,* at 2018 WL 2017567, at *3. "If the jury's verdict is 'clearly within the universe of possible awards which are supported by the evidence,' then a district court may not properly grant a new trial based merely on the

inadequacy of the damage award." *Id.* (citing *Brun–Jacobo v. Pan Am. World Airways, Inc.*, 847 F.2d 242, 246 (5th Cir. 1988)). "The Fifth Circuit has stated that it will not interfere with the factfinder's award of damages unless it is 'so inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.'" *Id.* (quoting *Munn v. Algee*, 924 F.2d 569, 578 (5th Cir. 1991)).

Furthermore, the Fifth Circuit has repeatedly held that "[t]he decision to grant or deny a motion for new trial generally is within the sound discretion of the trial court and will not be disturbed unless there is an abuse of that discretion or a misapprehension of the law." *Dixon v. International Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985); see also e.g., *Prytania Park Hotel, Ltd. v. General Star Indemnity Co.*, 179 F.3d 169, 175 (5th Cir. 1999); *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 252 (5th Cir. 1990). "[R]econsideration of a judgment is an extraordinary remedy which should be used sparingly. Rule 59 motions may not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to entry of the judgment." *Campbell v. St. Tammany Parish School Bd.*, 1999 WL 777720, at *1 (E.D.La.,1999) (citing Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 2810.1).

Because the matter is before the Court on diversity jurisdiction, the new trial standards of Louisiana law are applicable. *See Foradori v. Harris,* 523 F.3d 477,

498 (5th Cir. 2008) ("[I]n an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy....").

Under Louisiana law, "[a] new trial shall be granted ... [w]hen the verdict or judgment appears clearly contrary to the law and evidence." LA. CODE CIV. P. 1972(1). "The trial court's discretion in ruling on a motion for new trial is great." *Davis v. Wal–Mart Stores, Inc.,* 774 So. 2d 84, 93 (La. 2000), and "the court can evaluate the evidence, draw it's [sic] own inferences and conclusions, and determine whether the jury 'erred in giving too much credence to an unreliable witness.'" *Fair v. Allen*, 669 F.3d 601, 605 (5th Cir. 2012) (quoting *Joseph v. Broussard Rice Mill, Inc.*, 772 So.2d 94, 104) (La.10/30/00)). However, the Louisiana Supreme Court has cautioned:

> The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution....Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.

*Davis*, 774 So.2d at 93. In making this determination, the trial court must balance the great deference given to the jury as the factfinder and the discretion bestowed upon it in reviewing the motion, but the scales are "clearly tilted in favor of the survival of the jury's verdict." *Id.* at 93–94. The decision is to be made on a case-by-case basis. *Id*. at 94.

Defendants contend that Plaintiff's general damages award is excessive and tainted by overwhelming sympathy for the Plaintiff, which justifies a new trial on damages, or alternatively, that Plaintiff's general damage award is excessive on its face and remittitur is appropriate. The jury awarded Plaintiff $2,500,000 in general damages, as follows: past physical and mental pain and suffering ($1,000,000); future physical and mental pain and suffering ($750,000); past and future disability and loss of enjoyment of life ($750,000).

*2. Discussion*

In the motion seeking a new trial, Defendants assert that the jury's verdict was "clearly excessive" and "inappropriately tainted by passion in the form of sympathy and compassion for the Plaintiff." Defendants complain of the Court's rulings in several pretrial motions in limine regarding: testimony from Plaintiff's structured settlement broker, Alan Heisser, records concerning Plaintiff's allegedly suspended commercial driver's license, and Plaintiff's records from his social security disability file.

The Court initially granted Defendant's motion in limine to exclude the testimony of Mr. Heisser, *Rec. 64,* reasoning that Plaintiff, himself, could provide any testimony about his intentions related to any structured settlement of the damages awarded in this case of uncontested liability. However, following Defendants' cross-examination of Plaintiff which resulted in entering stipulations into the record, in lieu of continuing Plaintiff's cross-examination, *infra,* the Court reversed its ruling finding that Mr. Heisser could testify regarding Plaintiff's structured settlement plan.

The Court granted Plaintiff's motion to exclude Defendant's examination of Plaintiff about the alleged suspension of a commercial driver's license in Ohio, *Rec. 50,* which Defendants contended resulted from Plaintiff's failure to pay child support in 2002. The Court granted the motion under Federal Rules of Evidence 609 and 403, finding that the probative value of admitting such evidence outweighs its prejudicial effect. The Court further noted that Plaintiff was employed by Martin Automotive as a driver at the time of the accident.[1]

Finally, Defendants primarily complain that the Court's pre-trial ruling which excluded Plaintiff's Social Security Disability records as well as medical records

---

[1] The Court notes that Diogo Taveres, Plaintiff's supervisor at Martin Automotive, testified he confirmed Plaintiff had a valid commercial driver's license when Plaintiff applied for the job in June 2017.

from 2009,[2] *R. 74*, allowed Plaintiff to "provide a simple, endearing narrative to the jury." *R. 108-1, p. 5*. Specifically, Defendants argue that plaintiff was able to present to the jury that, although struggling early in his life, Plaintiff, at the time of the accident, was physically robust and psychologically sound, had not seen a physician for nearly a decade, and had worked almost continuously, including the time period between January 2008 and January 2010.

In order to refute this testimony, Defendants challenged Plaintiff's credibility during his cross-examination by impeaching his prior deposition testimony with minor inconsistencies such as whether he: left school in the 10th or 11th grade; graduated from high school or earned a GED; worked 45 hours or 50-55 hours per week at Martin Automotive; "rubbed" a fence post with his truck in 2004 or had no accidents; got a ticket in Michigan in 2007 or never received a ticket; took a picture in 2015 or in 2016; and raised his daughter or his step daughter.

During this cross-examination, Plaintiff became increasingly agitated and the Court admonished defense counsel at side bar several times and reminded him of Plaintiff's treating psychiatrist, Dr. Patrick Hayes', prior testimony that based on his current mental status Plaintiff would not respond well to such questioning. Defense counsel continued to request that the Court allow him to introduce Plaintiff's medical

---

[2] The Social Security records also contained criminal records more than 10 years old. The Court found that the social security records were prejudicial under Fed. R. Evid. 403 and were not relevant based on the different standard applied to Social Security disability determinations.

10

records located in the Social Security records as evidence and cross-examine him. Ultimately, the Court allowed defense counsel to question Plaintiff concerning only his representations made on the documents while applying for Social Security benefits in July, 2009. As Plaintiff became increasing agitated during this line of questioning, the Court recessed and instructed defense counsel to refrain from asking questions "that seem to be intended to purposefully agitate [Plaintiff]." Referring to Plaintiff, Defense counsel told the Court that he did not want to "light him up." The Court also instructed Plaintiff to maintain his composure.

Following the recess, in what defense counsel characterizes as "the necessary rigors of cross-examination", *R. 108-1, p. 5*, defense counsel asked Plaintiff to explain a reference to a surgery contained in his employment resume. Plaintiff was clearly anguished and upset when he stood up and responded, "I have full dentures top and bottom, I had to have my teeth removed." At that point he opened his mouth and showed his false teeth. Stating that he had been "under attack," "tortured" and "tormented" since the accident, Plaintiff attempted to bolt from the witness stand.

Thereafter, the parties reached a stipulation to end Plaintiff's cross-examination.[3] Defense counsel framed the stipulation and Plaintiff's counsel agreed.

---

[3] Defense counsel conducted almost two hours of cross-examination prior to the agreement by the parties to end the cross-examination and to enter into a stipulation regarding Plaintiff's testimony.

The Court read the stipulation to the Jury and allowed Defendants to present evidence of it during the remainder of the trial.[4]

Defendants contend that Plaintiff's outburst described above along with his contentions that Defendants had "tortured and tormented" him was "fertile ground for bias in the form of the jury's sympathies." They submit that "justice requires a new trial as no reasonable jury could not be swayed by sympathy" under the facts of this trial. Defendants rely on the Fifth Circuit case, *Whitehead v. Food* Max, 163 F.3d 265 (5th Cir. 1998) for the proposition that "awards influenced by passion and prejudice are the antithesis of a fair trial." *Id.* at 276. Defendants reliance on *Whitehead* is misplaced. *Whitehead* was a civil suit against Kmart resulting from the kidnapping of a mother and daughter at knife-point from the store's parking lot; the mother was sodomized and raped in the course of the kidnapping. *Id.* at 268. At trial, counsel for the plaintiff engaged in a litany of improper arguments that seemed calculated to undermine the jury's impartiality. The Fifth Circuit remanded the case for a new trial based on the improper statements of *the plaintiff's counsel* which it found highly prejudicial to the defendant. *Id.* at 276.

Here, Defendants seek a new trial on damages in light of Plaintiff's outburst and excessive damages award. They contend that the jury's sympathy for Plaintiff's

---

[4] Plaintiff stipulated the he had previously denied past problems controlling his anger when he testified at his deposition, that Plaintiff testified at his deposition that his left hand did not feel better and does not work at all, and Plaintiff agreed to stipulate to the introduction into evidence of the entirety of Defendants' Exhibit 25(B). *R. 108-1, FN 19*.

condition and circumstances resulted in their damages award for Plaintiff. The Court disagrees.[5] When a jury verdict results from "passion or prejudice," a new trial is the proper remedy. *Wells v. Dallas Indep. School Dist.*, 793 F.2d 679, 683 (5th Cir. 1986). The Court cannot discern either "passion or prejudice" in the damages awarded by the Jury. The law and the evidence adduced at trial demonstrates a lack of abuse of the jury's great discretion in the total award of general damages. Defendants' Motion for new trial will be denied.

B. Motion for Remittitur

*1. Legal Standard*

Alternatively, Defendants move under Rule 59(e) to reduce Plaintiff's general damages award. Plaintiff general damages included past, present, and future pain and suffering and past, present, and future loss of enjoyment of life. Following six days of testimony, the jury returned a verdict for Plaintiff totaling $2,500,000.00. Defendants contend the award is excessive on its face and remittitur is appropriate.

---

[5] The Court instructed the jury as to bias in two separate instructions:

> You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.
>
> . . .
>
> Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice

Fifth Circuit Pattern Civil Jury Instructions (Rev. 10/20/16 (2014),

As previously stated, this Court reviews the jury verdict in light of Louisiana's additur/remittitur statute, La.Code Civ. Proc. art. 18-14, which provides:

> If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.

Further, the Court is guided by the principle, enunciated in Louisiana case law, that, "[i]n assessing general damages in cases of tort, much discretion is given the trier of fact." *Pritchett v. Martin*, 612 So.2d 290, 292 (La.Ct.App.1992). "[T]he jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence." *Davis v. Wal–Mart Stores, Inc.*, 774 So.2d 84, 93 (La. 2000).

"General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'" *Duncan v. Kansas City S. Ry. Co.*, 773 So.2d 070, 682 (La. 2000). Damages to compensate for pain and suffering or loss of enjoyment of life cannot be quantified with precision. Accordingly, "[v]ast discretion is accorded the trier of fact in fixing general damage awards." *Id*. Before a trial court award may determine an award to

be excessive, the Court "must look first, not to prior awards, but to the individual circumstances of the present case." *Reck v. Stevens*, 373 So.2d 498, 501 (La.1979). "Awards may vary greatly according to the facts and circumstances in each case." *Bunch v. Gay*, 155 So.2d 269. 270 (La.Ct.App.1963). "The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration." *LeBlanc v. Stevenson*, 770 So, 2d 766, 772 (La.2000).

    2. *Discussion*

Defendants initially argue that the excessiveness of this award is demonstrated by comparing it to the case of *Kinnerson v. Arena Offshore, LP*, 2019 WL 4392206, at *1 (W.D.La., 2019). In that case, Kinnerson, a 27 year old technician aboard a fixed offshore oil platform, injured his back when he jumped out of a personnel basket onto the deck of a vessel. Kinnerson was diagnosed with a herniated disc which required surgery and a permanent stimulator. Following a bench trial, the presiding district judge awarded Kinnerson $5,810,117.33 in total damages, with general damages in the amount of $1,300,000.00. Defendants argue that Kinnerson's award of $1,200,000.00 less than Plaintiff's general damages award in this case can "only" be explained as the jury in this case being motivated by sympathy. The Court disagrees. Plaintiff's injuries in this case were caused by a horrific vehicular accident and were more severe and enduring than those in *Kinnerson* where the plaintiff's injury and pain were localized in his back.

Defendants also cite two Fifth Circuit cases, arguing they "further illustrate the excessive nature of the $2,500,000 general damage award" in this case. In *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347 (5th Cir. 1988), the plaintiff underwent two back surgeries, was confined to crutches for the remainder of his life, and suffered from arachnoiditis, spina bifida, and a displaced hip. The general damages award was $555,000. In *Hernandez v. M/V Rajaan*, 841 F.2d 582 (5th Cir. 1988), the plaintiff was paralyzed from the waist down, suffered "phantom pains" in his legs, underwent several painful surgical procedures, and would require more surgery in the future. The general damages award was $1,000,000.[6]

As in *Kinnerson,* each of the cases cited above dealt with injuries involving only one region of the spine, Here, Plaintiff's injuries included his back, neck, shoulder, knee and hand for which he has had surgeries, will require surgeries (i.e. neck and back fusions) and will require additional surgeries (i.e. knee replacement). More significantly, Plaintiff's experts testified that Plaintiff's traumatic brain injury, which resulted in a concussion and loss of consciousness, caused him to suffer organic brain injury and/or Post Traumatic Stress Disorder. They stated that Plaintiff could not return to work and that he would require years of intensive psychotherapy.

---

[6] In old awards (10 – 30 years old) such as those in *Hernandez* and *Johnson*, the Fifth Circuit has factored in inflation when making comparisons such as Defendants make in this case. *See Hale v. Wood Group PSN, Incorporated*, 769 Fed.Appx. 113 (5th Cir. 2019) (citing *Puga v. RCX Solutions, Incorporated*, 922 F.3d 285, 298 (5th Cir. 2019); *Ledet v. Smith Marine Towing Corp.*, 455 F. App'x 417, 422–23 (5th Cir. 2011)). In particular, the plaintiff in *Hale v. Wood Group PSN, Inc*. noted that "the $1,000,000 award in [*Hernandez*], adjusted for inflation, would now be $2,152,039."*Id*., 2018 WL 4609453, at *6 (W.D.La., 2018).

In his testimony about the persistence and seriousness of his injuries, Plaintiff stated that while he had always suffered from mental and emotional issues, he was able to "get though" a "chaotic day" by creating and following a routine that included a daily, rigorous gym workout and by riding his motorcycle. As a result of the accident he stated he cannot do his routine gym workouts nor ride his motorcycle, but instead, can only do limited physical therapy. Plaintiff also testified as to his pride in being a truck driver and his ability to see 48 states. He indicated that losing his career made him feel like he had to mourn his own death because "I have lost what I was - what I'd worked for."

Plaintiff also suffered impairment of his social interaction and involvement due to his injuries. For example, Plaintiff's former girlfriend, Ms. Guilliot, testified that Plaintiff completely changed following the accident—"he was not the same man he was before" and ultimately he drove her away. The testimony at trial, in conjunction with the rest of the record, certainly reflects a diminishment in Plaintiff's quality of life.

Finally, in support of his argument that his general damages award was not excessive, Plaintiff cites several cases involving similar injuries. Perhaps must notable is *Hale v. Wood Group PSN, Inc.*, 2018- WL 4609453 (W.D.La. 2018), recently decided by this Court and affirmed by the Fifth Circuit, *Hale v. Wood Group PSN, Incorporated*, 769 Fed.Appx. 113 (5th Cir. 2019). In *Hale*, the jury awarded

$2.25 million in general damages for the victim of a personnel basket transfer resulting in injuries to the neck and back. The plaintiff had neck and back surgery, and was assigned a 30% whole body impairment. The defendants sought a Motion for New Trial based on the fact that the award was excessive. The Court held that, in light of the deferential standards that govern the defendants' motion, the general damages awarded by the jury was not excessive. As noted, the Fifth Circuit affirmed the Court's ruling.

### C. Motion To Stay

Pursuant to Rule 62(b) of the Federal Rules of Civil Procedure, "the court may stay the execution of a judgment—or any proceeding to enforce it—pending disposition of" a motion to alter or amend a judgment under Rule 59. Fed. R. Civ. P. 62(b)." *Howell v. Town of Ball*, 2017 WL 6210869, *1 (W.D.La. 2017). While Rule 62(b) grants a district court the authority to stay a judgment while it considers and disposes of Rule 59 motions, Rule 62(b) gives the court no authority to stay the underlying judgment beyond that point. *See In re Zapata Gulf Marine Corp*., 941 F.2d 293, 295 (5th Cir. 1991). Because the Court disposes of the instant motion under Rule 59 with this Order, the Court finds that ruling on the Motion to Stay pursuant to Rule 62(b) is unnecessary. Also, Defendants alternatively request that the Court grant Defendants ten days within which to file a motion for approval of a

Supersedeas Bond. Based on Defendants' filing of such motion on March 5, 2020 and this Court's order granting same, R. *110*, 111, the alternative motion is moot.

### III. CONCLUSION

Thus, for the reasons stated in this Ruling,

**IT IS ORDERED** that Defendants, Landstar Ranger Inc. and Jacques J. Manasee's, Motion for a New Trial, Or Alternatively For Remittitur, Pursuant to Fed. R. Civ. P. 59 [Rec. Doc. 108] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants, Landstar Ranger Inc. and Jacques J. Manasee's, Request For Stay On Execution On Judgment Pursuant to Fed. R. Civ. P. 62(b) is **DENIED AS MOOT**.

**THUS DONE AND SIGNED** this 22nd day of May, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE